OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Mt. Vernon Fire Insurance Company ("Mount Vernon"), filed June 20, 2006, and the Notice of Cross Appeal of Leanne Nicholas, Dimitri Nicholas, and Buckeye State Mutual Insurance Company ("Buckeye"), filed June 30, 2006. On October 23, 2000, Kenneth Kohlhorst was injured at the home of the Nicholases and subsequently brought suit against them. At the time of Kohlhurst' s injury, the Nicholases maintained a homeowners liability policy issued by Buckeye with a liability limit of $500,000.00. The Nicholases reported the injury to their independent insurance agent, McColloch-Baker Insurance Services Agency ("McColloch"). McColloch completed a Notice of Occurrence/ Claim form which it sent to Buckeye. Buckeye then retained counsel to defend the Nicholases, and advised them that "a judgment could be secured in excess of the limits of your insurance policy." Following a trial, the jury returned a verdict in favor of Kohlhorst in the amount of $584,560.71.
 {¶ 2} In addition to their primary insurance, the Nicholases maintained an excess umbrella policy, issued by Mount Vernon, in the amount of $4,000,000. Mount Vernon was not notified of the Kohlhurst litigation until after the trial. The Nicholases and Buckeye brought suit against McColloch and Mt. Vernon, asserting several causes of action, including one for declaratory judgment. On April 6, 2006, the Miami County Common Pleas Court held a bench trial on the Nicholases' declaratory judgment action, and on April 28, 2006, the trial court determined that Mount Vernon owed $84,560.71 pursuant to its contract with the Nicholases. Buckeye had advanced that amount to the Nicholases after the trial. The Nicholases and Buckeye moved the court for prejudgment interest, pursuant to R.C. 1343.03(A), and the trial court sustained their motion, holding that the interest accrued from the date of the declaratory *Page 3 
judgment decision.
 {¶ 3} The Nicholases had purchased the umbrella policy in anticipation of a charity event they planned to host at their home with an expected attendance of 250 people. McColloch was unable to procure an umbrella policy for the Nicholases from any insurers authorized to do business in Ohio because of Mr. Nicholas' poor driving record. McColloch contacted a third party surplus lines broker, International Excess Agency, Inc. ("International"), to procure the Mount Vernon policy for the Nicholases, since Mount Vernon is not authorized to do business in Ohio, and only a licensed surplus lines broker can procure insurance from an unauthorized insurer.
 I {¶ 4} Mount Vernon asserts three assignments of error. Mount Vernon's first assignment of error is as follows:
 {¶ 5} "THE TRIAL COURT'S FACTUAL FINDING THAT McCOLLOCH-BAKER COLLECTED THE PREMIUM FROM MR. NICHOLAS AND FORWARDED THAT TO MT. VERNON WAS NOT SUPPORTED BY COMPETENT AND CREDIBLE EVIDENCE"
 {¶ 6} Mount Vernon argues that the trial court erred in its determination that "[t]he facts are undisputed that [McColloch] collected their fee, the Excess fee and the Mt. Vernon fee and forwarded the latter two on to the respective corporations."
 {¶ 7} "An appellate court may not disturb a trial court's findings of fact where they are supported by competent and credible evidence."Vance v. Vance, 152 Ohio App.3d 391, 784 N.E.2d 172, 2003-Ohio-310.
 {¶ 8} "A surplus line broker's license permits the person named in the license to *Page 4 
negotiate for and obtain insurance, other than life insurance, on property or persons in this state from insurers not authorized to transact business in this state." R.C. 3905.30. "No person not licensed under section 3905.30 of the Revised Code shall take or receive any application for such insurance upon property or persons in this state, or receive or collect a premium or any part thereof for any unauthorized insurance company." R.C. 3905.30.
 {¶ 9} Josephine McColloch testified that McColloch was not licensed to place business for Mount Vernon. She testified that International sent the original umbrella policy to McColloch and billed McColloch for the policy. Josephine testified that McColloch never received an invoice from Mount Vernon. McColloch then sent a premium notice to the Nicholases, and the Nicholases submitted payment to McColloch. McColloch retained a small portion of the money as a commission, and according to Josephine, McColloch then sent the balance to International. According to Josephine, "We have never had any contact with Mount Vernon. The only thing we ever received was a policy from International Excess on Mount Vernon paper." The policy at issue identifies International as "agent," and McColloch is not identified anywhere on the policy. Josephine testified that "we were never the agent. We were merely a conduit to get coverage for Mr. Nicholas."
 {¶ 10} Given the testimony of Josephine McColloch, we agree with Mount Vernon that the trial court's finding that McColloch collected the premium from Mr. Nicholas and forwarded it to Mount Vernon is not supported by competent and credible evidence. There is no indication in the record that McColloch at any time communicated with Mount Vernon directly. Mount Vernon's first assignment of error is accordingly sustained.
 {¶ 11} Mount Vernon's second assignment of error is as follows: *Page 5 
 {¶ 12} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT McCOLLOCH-BAKER WAS MOUNT VERNON'S AGENT"
 {¶ 13} The trial court determined that McColloch acted as Mount Vernon's agent after the following analysis:
 {¶ 14} "A person is the agent of another, when the other person has given the agent authority, express or implied, to act on behalf of the other person and the other person has retained the right to control the details of the manner or means of doing the act.
 {¶ 15} "Implied authority to act occurs when, from all the facts and circumstances in evidence, the agent's conduct was reasonably necessary to complete the act for which the agent was hired or permitted to do.
 {¶ 16} "In the present case it was [McColloch] who acquired the Mt. Vernon umbrella policy for the Nicholases, via International Excess Agency.
 {¶ 17} "It was McColloch who forwarded the policy on to the Nicholases[,] who collected the total premium due (which included fees due to [McColloch], International Excess and Mt. Vernon) from the Nicholases.
 {¶ 18} "Whether Mt. Vernon wishes to acknowledge it or not, they permitted [McColloch] to act, for a limited purpose, as their agent in delivering the policy to the Nicholases and in collecting the premium due from [the] Nicholases to Mt. Vernon.
 {¶ 19} "The Mt. Vernon policy clearly indicates at page 3 of 4:
 {¶ 20} `B. Notify us of a loss. If something happens that might involve this policy, you must let us know promptly. Send written notice to us or our agent. * * *
 {¶ 21} `C. Notify us of a claim or suit. If a claim or suit is filed against you, notify your *Page 6 
underlying insurer and us as soon as practical. * * *'
 {¶ 22} "While Excess International was clearly acting as an agent for Mt. Vernon, Mt. Vernon's actions in permitting another ([McColloch]) to deliver the policy and collect the premium, raises the issue of agency by estoppel.
 {¶ 23} "Agency by estoppel is established when the principal clothes the agent with the appearance of authority or knowingly permits the agent to act as though he had such authority. The principal will be bound by acts within the agent's apparent authority upon which third persons rely in good faith.
 {¶ 24} "By permitting others to deliver their policy and collect the fee due on the policy, Mt. Vernon has affirmatively permitted others to act as its agent.
 {¶ 25} "By accepting notice of the claim from Nicholases, [McColloch] assumed the duty to notify the Nicholases' insurance companies of the claims.
 {¶ 26} "All of this was performed in good faith by the Nicholases.
 {¶ 27} "Since Mt. Vernon was constructively notified of the claim via the Nicholases' timely notice on [McColloch], the policy in question provides coverage for the Nicholases for the excess judgment rendered against them. Therefore, the Plaintiffs [sic] complaint for declaratory judgment is found well taken in this regard."
 {¶ 28} "In Master Consolidated Corp. V. BancOhio Natl. Bank (1991),61 Ohio St.3d 570, 575 N.E.2d 817, the Ohio Supreme Court held that:
 {¶ 29} `In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or *Page 7 
knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.' Id. at syllabus.
 {¶ 30} "In Master Consolidated, the court went on to clarify the relationship between estoppel and apparent authority. Specifically, the court said that the two concepts:
 {¶ 31} `are similar in that they are based on the underlying principal that a person shall be bound by his words or deeds. They are distinguished as follows: estoppel is essentially the principle that a person must compensate another for any change of position (loss) induced by reliance on what the person said or otherwise manifested, because it would be unjust to allow him to deny the truth of his words or manifestations * * * ." Fox Lamberth Enters., Inc. v. Craftsman HomeImprovement Jnc, Montgomery App. No. 21060, 2006-Ohio-1427. Agency by estoppel is found "`where a principle [sic] has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages, and the nature of the particular business, is justified in assuming that such agent is authorized to perform on behalf of his principle [sic] a particular act, such particular act having been performed the principle [sic] is estopped as against such innocent third person from denying the agent's authority to perform it.'" Id. "[Apparent authority is based on the objective theory of contracts, and arises when a person manifests to another that an agent or third person is authorized to act for him, irrespective of whether the person really intended to be bound, of whether the person told the same thing to the agent, and of whether the other person changed his position. (Internal citations omitted).
 {¶ 32} "Some courts have held that agency by estoppel and apparent authority are *Page 8 
equivalent, and are based on the same elements." Id.
 {¶ 33} Regardless of which view is applied, there is no evidence that Mount Vernon held McColloch out to the Nicholases as an entity authorized to act for Mount Vernon, or that Mount Vernon even knew of McColloch's actions. The record makes clear that there was no contact between Mount Vernon and McColloch, because McColloch was not a surplus lines broker and had to rely upon International to procure the excess coverage for the Nicholases. The Nicholases' and Buckeye's reliance on R.C. 3929.27, which provides, "A person who solicits and procures the application [of insurance] shall be considered as the agent of the party, company, or association thereafter issuing a policy upon such application * * * despite any contrary provisions in the application or policy," is misplaced. McColloch obtained the application for the umbrella policy from International and not Mount Vernon. There was no "voluntary act" by Mount Vernon to indicate to the Nicholases that they could justifiably assume that McColloch was authorized to act on Mount Vernon's behalf; the policy indicates that International, and not McColloch, is Mount Vernon's agent. While Mr. Nicholas testified that he believed that his notice to McColloch was sufficient to satisfy his duty of notice under his umbrella policy, words or deeds on Mount Vernon's part justifying such a belief are absent from the record. Mr. Nicholas testified, "My agent was McColloch-Baker and I took them all the paperwork that was ever delivered to me and informed them of the problem, the potential lawsuit and it was told to me that it would be taken care of. * * * And that I was more than amply covered," but it is Mount Vernon's actions, and not McColloch's, that determine the existence of an agency. We agree with Mount Vernon that the trial court erred as a matter of law in concluding that McColloch was Mt. Vernon's agent. Mount Vernon's second assignment *Page 9 
of error is sustained.
 {¶ 34} Mount Vernon's third assignment of error is as follows:
 {¶ 35} "THE TRIAL COURT ERRED IN CONCLUDING THAT THE MOUNT VERNON POLICY COVERED THE EXCESS JUDGMENT.
 {¶ 36} "A. Because McColloch Was Not Mt. Vernon's Agent, Notice To McColloch Did Not Satisfy Part (1) [of the umbrella policy].
 {¶ 37} "B. Plaintiffs Failed To Satisfy Part (2) Of The Notice Provision, Which Requires Actual Notice.
 {¶ 38} "C. Breach Of The Policy's Notice Requirements Bars Coverage.
 {¶ 39} "D. Plaintiffs Did Not Rebut The Presumption of Prejudice."
 {¶ 40} "Parties generally have a duty to read documents before signing them." Savage v. Residenz Realty, (Oct. 10, 1997), Greene App. No. 96-CA-150.
 {¶ 41} "[W]hen an insurer's denial of * * * coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary."Ferrando v. Auto Owners Mutual Insurance Co. (2002), 98 Ohio St.3d 186,205-206, 2002-Ohio-7217.
 {¶ 42} The Mount Vernon policy provides in relevant part as follows:
 {¶ 43} "Your Duties to Us
 {¶ 44} "These are things you must do for us. We may not provide coverage if you do not assist us. *Page 10 
 {¶ 45} "1. Notify us of a loss. If something happens that might involve this policy, you must let us know promptly. Send written notice to us or our agent. Include the names and addresses of the injured and witnesses. Also include the time, place and account of the accident.
 {¶ 46} "2. Notify us of a claim or suit. If a claim or suit is filed against you, notify your underlying insurer and us right away. You must send us every demand, notice, summons or other process you receive.
 {¶ 47} "3. Help and cooperate with us and your underlying insurer at all times regarding:
 {¶ 48} "a. investigation of and settlement of claims.
 {¶ 49} "b. enforcement of your rights against others.
 {¶ 50} "c. attendance at hearings and trials.
 {¶ 51} "d. preservation of evidence.
 {¶ 52} "e. location of witnesses.
 {¶ 53} "4. Maintain your underlying insurance. You agree to maintain all insurance policies affording in total the coverage and limits stated in Item 6. Required Underlying Insurance Coverage of the DECLARATIONS in full force and effect during this POLICY PERIOD except for reduction of aggregate limits where applicable, solely as a result of the payment of claims for a loss which takes place during the POLICY PERIOD.
 {¶ 54} "If required underlying limits are not maintained, or are unavailable because of insolvency of your underlying insurance or by reason of your breaching your underlying contract, you will be responsible for the underlying limit amount of any loss.
 {¶ 55} "In the event of reduction or exhaustion of underlying insurance by punitive or *Page 11 
exemplary damage claims, the Company shall be liable for loss or claims insured hereunder only to the extent that it would have been liable without reduction or exhaustion of the underlying insurance by punitive or exemplary damage claims.
 {¶ 56} "Your failure to comply with the foregoing paragraphs will not invalidate this policy, but in the event of such failure, we shall be liable under this policy only to the extent that we would have been liable had you complied with these obligations."
 {¶ 57} Having already determined that McColloch was not Mount Vernon's agent, it follows that notice to McColloch of the impending Kohlhurst litigation did not satisfy the Nicholases' duties under part (1) of their policy with Mount Vernon. The policy required written notice to Mount Vernon or International, Mount Vernon's agent. The Nicholases also failed to comply with part (2) of the policy in that they did not send any process they received directly to Mount Vernon. The policy jacket plainly displays a 1-800 telephone number as well as an internet address by means of which the Nicholases could have contacted Mount Vernon.
 {¶ 58} Mr. Nicholas testified that he "had never seen anything to say that" McColloch was not Mount Vernon's agent. While Josephine testified that sometimes McColloch will notify umbrella carriers of a claim on behalf of their clients, and that she assumed that the Nicholases counted on McColloch to notify Mount Vernon, and that she never told the Nicholases that she would not notify Mount Vernon, the Nicholases have not offered any reason why the duty to read their umbrella policy did not apply to them in this instance. In fact, when asked if he read the Mount Vernon policy when he received it, Mr. Nicholas replied, "Not entirely."
 {¶ 59} The Nicholases and Buckeye failed to elicit testimony to rebut the presumption *Page 12 
of prejudice to Mount Vernon resulting from the breach of the prompt-notice requirement, and notice after the jury reached its verdict is prejudicial. Carl Miller, who handled claims for Buckeye before he retired in 2002, testified on cross-examination that an insured who may have exposure in excess of the policy limits is entitled to notice to protect their interest in a lawsuit, and he conceded that an excess carrier facing potential exposure is also entitled to notice to protect its interests. Had Mount Vernon been notified of the Kohlhurst litigation, it could have pushed for settlement within the limits of the Buckeye policy. We agree with Mount Vernon that breach of its notice requirement bars coverage, and Mount Vernon's third assignment of error is sustained. The judgment of the trial court is reversed and this matter is remanded.
 II {¶ 60} The Nicholases and Buckeye assert the following assignment of error in their cross appeal:
 {¶ 61} "THE TRIAL COURT INCORRECTLY SET THE ACCRUAL DATER FOR PREJUDGMENT INTEREST."
 {¶ 62} Our decision on Mount Vernon's appeal renders this assignment of error moot.
WOLFF, PJ., concurs.